WILLIAM W. FRANCIS, JR., P.J.
Robert W. Berry ("Berry") appeals the motion court's denial of his Rule 24.035[1] motion for post-conviction relief after an evidentiary hearing. Finding no merit to his point relied on, we affirm the judgment of the motion court.
Factual and Procedural Background
In reviewing a motion court's judgment on a Rule 24.035 motion, we defer to the motion court's credibility determinations (explicit and implicit), viewing the evidence in the light most favorable to the motion court's judgment. Spicher v. State , 547 S.W.3d 579, 583 (Mo.App. S.D. 2018). We recite other evidence as necessary for context and comprehensibility.
In November 2010, a young girl (with whom Berry had considerable interactions) reported that Berry had sexually abused her. The proper authorities were contacted, and investigations began into the allegations. When Berry's wife ("Wife") learned of the accusations, she took her children and left the couple's joint residence.
Berry already had a tumultuous relationship with Wife's mother ("Victim"), and was convinced it was Victim who had reported the allegations of sexual abuse to the authorities-it was not.
On January 9, 2011, Victim and her husband had just finished with church. Victim's husband dropped her off at their home, and then went to the hospital to attend to a medical ailment. Meanwhile, Berry had secretly entered their home.[2]
*104 He brought two guns and a crowbar. Berry took the couple's dog into a bathroom, shot it in the neck, and closed the door behind him. He turned off all the lights (including the light on the outside entry way), except for a small light in the kitchen.
Victim came in the front door, and saw Berry emerge from the hallway. He immediately started shooting at Victim, hitting her several times in the head. Victim tried to get away to the living room, but Berry followed and kept shooting. Victim was hit again, this time in the arm. She tried to call for help, but discovered that her phone was disabled. In desperation, Victim rushed at Berry in the kitchen, and tried to physically fight him off. Berry beat Victim over the head with his rifle, continuing to do so as Victim retreated into the living room. There, Berry hit Victim's head so hard with the rifle that the rifle fell apart in pieces onto the floor.
Berry ran out the front door. Victim tried to close and lock the front door, but Berry re-emerged and began forcing the door open. When Victim pushed back, Berry shot through the door at Victim. During the struggle, Berry resorted to bashing Victim over the head with a crowbar. Victim tried to barricade the door by pulling her couch in front of it but Berry forced the door open again. She reached to close it when Berry fired and shot her through the hand. Victim got the door closed, and succeeded in barricading it with the couch.
Victim retreated out the back door and tried to reach a neighbor's home. She got half way across the yard, and was maneuvering through a barbed wire fence, when she suddenly felt Berry put the barrel of his gun to the side of her head. He shot her in the head twice, at point-blank range.
Astonishingly, Victim got away again, and continued her retreat along the darkest areas of the barbed-wire fence. She looked and listened for Berry. When she thought she was at a sufficient distance from him, she desperately sprinted to her neighbor's house. She quickly explained the situation to the neighbor, who called the authorities. When police arrived, Victim identified Berry as her assailant and passed out. Officers found significant corroborating evidence of the events herein described at the scene.
Berry fled in his car. He shaved his head and acquired a wig, women's clothing, and a road atlas. Berry made it to Arkansas by the time authorities caught up with him, and led the police on a high-speed car chase before he was apprehended. Police found blue jeans stained with Victim's blood in his car.
Berry was charged by Information, in Case No. 11CT-CR00014-01, with the class A felony of assault in the first degree (Count I); armed criminal action (Count II), and the class B felony of burglary in the first degree (Count III), for offenses committed on or about January 9, 2011. Berry was subsequently charged in Case No. 13CT-CR00701-0l with the unclassified felony of attempted statutory sodomy of a child less than twelve or in the alternative the unclassified felony of attempted enticement of a child, and two counts of the class B felony of child molestation in the first degree for events occurring between August 1, 2010 and November 30, 2010. These matters were consolidated for trial under case number 11CT-CR00014-01.
A public defender ("plea counsel") was subsequently appointed on Berry's behalf. The record indicates that plea counsel commenced with a vigorous pre-trial defense. Specifically, plea counsel:
• Secured a mental health evaluation for Berry.
• Reviewed all the volumes of discovery, deposed Wife, the Victim, the neighbor *105 who called 911, the first responding law enforcement officer, and cross-examined the State's firearms expert during a deposition.
• Thoroughly investigated Berry's proposed self-defense claim: he turned over the name of every potential witness Berry provided to his investigator, the investigator sought out every potential witness whom he could plausibly identify, and the investigator reported to plea counsel that none of the potential witnesses located would be of aid to the defense. Plea counsel concluded, in his professional opinion, that none of the potential witnesses would have been helpful to the defense at trial.
• Communicated to Berry his conclusions about the likely outcome of the options available to the defense; told Berry that his self-defense claim was not likely to succeed at trial; and told Berry he "had a high likelihood of going to prison both ways," whether by plea agreement or by going to trial, "based on the evidence as [plea counsel] saw it."
• Advised Berry that, in his professional opinion, it was in Berry's best interests to seek a plea bargain, and upon Berry's agreement, thereafter secured a Plea Agreement from the prosecutor. The Plea Agreement stated, in relevant part, that probation would be denied, that the charges arising out of Case No. 13CT-CR00701-0l (concerning Berry's sexual abuse of a young girl) would be dismissed, that there was no agreement as to sentencing for the remaining charges in Case No. 11CT-CR00014-01, and the "STATE WILL SEEK MAXIMUM SENTENCE AND CONSECUTIVE TIME." Plea counsel explained the Plea Agreement to Berry, explained the sentencing ranges for the charges, and explained that the State would be seeking the maximum sentences for each charge with the sentences to run consecutively.
On February 24, 2015, Berry entered into the Plea Agreement. Berry signed the Plea Agreement, attesting that he had read and fully understood the Plea Agreement, and that his plea counsel had explained it to him.
On the same day, Berry also signed a "Petition to Enter Plea of Guilty," which stated, in pertinent part, that: (1) he received a copy of the Information, had read the charges, discussed them with his attorney, and fully understood the charges; (2) he told plea counsel all the facts and circumstances known to him about the charges and believed plea counsel was fully informed; (3) admitted he "got in a struggle with [Victim] in Christian Co. She got shot 7 times[ ]"; (4) he understood his right to plead not guilty, his right to a trial, and issues attendant thereto; (5) that plea counsel had advised him that the range of punishment was 10 to 30 years' imprisonment; (6) the prosecutor would dismiss Case No. 13CT-CR00701-01; (7) that neither he, nor his friends or loved ones, had been mistreated, threatened, coerced, or forced in any manner for his pleas of guilty; (8) plea counsel had done all he could do and Berry was satisfied with the advice and help counsel had given to him; (9) the trial court would not permit him to plead guilty if he maintained his innocence, and (10) was entering his guilty pleas because he was guilty and did not believe he could be found innocent by a jury. Berry signed the Petition to Enter Plea of Guilty, attesting that he was offering his pleas of guilty "FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WITH FULL UNDERSTANDING OF ALL MATTERS SET FORTH IN THE INFORMATION AND IN THIS PETITION AND EVERYTH1NG STATED HEREIN IS TRUE."
*106 Berry's plea counsel also signed a "Certificate of Counsel," which stated, in relevant part, that he explained the range of punishment to Berry; that Berry's pleas of guilty were in accordance with his understanding of the facts Berry related to him and was consistent with his advice to Berry; and he had investigated the circumstances of the case and had explored all avenues leading to facts relevant to guilt and degree of guilt or penalty.
Thereafter, a plea hearing was conducted.[3] The trial court read to Berry the charges against him, and Berry confirmed he understood the charges to which he was pleading guilty. Berry also confirmed he was familiar with the Plea Agreement and that he had signed the Plea Agreement. Berry further indicated that he was "able to talk to [plea counsel] and tell him what he need[ed] to know in order to properly represent [him,]" and he was "satisfied with [plea counsel's] services."
The prosecutor then announced that the range of punishment for Count I (class A felony of first-degree assault), was 10 to 30 years in prison, and Berry would be required to serve 85 percent of that sentence before he would be eligible for parole; Count II (armed criminal action) the range of punishment was a minimum of three years in prison; and the range of punishment for Count III (the class B felony of first-degree burglary), was 5 to 15 years in prison. If all three counts were to run consecutively, the maximum sentence Berry could receive was a "life sentence plus a 15-year sentence plus any number of years."
The State then recited the factual bases for the pleas of guilty. Plea counsel agreed that if the case proceeded to trial, that the State had enough evidence to make a submissible case as to the events occurring on January 9, 2011. Berry confirmed to the trial court that no one had made any promises to him in respect to the Plea Agreement, and no one had made any threats again him for his pleas of guilty. Berry then pled guilty to each of the three charges.
The trial court found that a factual basis existed for the pleas of guilty, that Berry's pleas of guilty were entered voluntarily and with an understanding of his rights. As such, the trial court accepted the pleas, and found Berry guilty beyond a reasonable doubt.
Berry was sentenced to 25 years in prison on Count I, and 3 years in prison on Count II, with the sentences to run consecutively. On Count III, Berry was sentenced to 10 years in prison, to be served concurrently with the sentences for Counts I and II.
On August 17, 2015, Berry timely filed a pro se motion to vacate or set aside or correct the judgment and sentence. Appointed counsel timely filed an amended motion on May 23, 2016.[4] In his amended motion, Berry asserted, in relevant part, that his "guilty plea was involuntary, unknowing and unintelligent because there was a significant conflict of interest between *107 movant and counsel such that movant felt he had no choice but to enter a plea to avoid going to trial with counsel who did not appear to movant to be responsive to his requests to prepare his case for trial." Berry also asserted that cooperation and communication between Berry and plea counsel had "completely broken down" in that plea counsel "refused to conduct requested depositions or undertake requested investigation or talk with requested witnesses."
An evidentiary hearing was held on May 26, 2017. Berry and plea counsel testified. On August 2, 2017, the motion court entered its "Findings of Fact and Conclusion of Law and Judgment," denying Berry's amended Rule 24.035 motion. This appeal followed.
In one point relied on, Berry asserts that the motion court erred in denying his motion for post-conviction relief because plea counsel failed to fully investigate his self-defense claim, rendering his pleas of guilty involuntary.
Standard of Review
Our review of the denial of a post-conviction motion under Rule 24.035[5] is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); Collings v. State , 543 S.W.3d 1, 8 (Mo. banc 2018). "A motion court's findings are presumed correct, and its judgment is clearly erroneous only if this Court is left with a definite and firm impression that a mistake has been made." Collings , 543 S.W.3d at 8. A motion court, "[a]s the trier of fact, ... determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony." Zink v. State , 278 S.W.3d 170, 192 (Mo. banc 2009) (internal quotation and citation omitted). "Simply because the motion court found individuals to be credible on certain issues and not credible on others does not indicate any error by the motion court." Id. Rather, "[t]he motion court's rejection of certain witness testimony as non-credible goes to whether Movant met his burden of demonstrating a claim for relief[.]" Davis v. State , 486 S.W.3d 898, 905 n.2 (Mo. banc 2016).
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. at 2065. "Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689, 104 S.Ct. at 2066.
Second, the defendant must show prejudice from his counsel's deficient conduct. Id. at 687, 104 S.Ct. at 2064. To satisfy this burden, a claimant must show a reasonable probability that but for trial counsel's defective performance, demonstrated in the first component, the outcome *108 would have been different. Id. at 694, 104 S.Ct. at 2068. A movant's claim must fail if movant makes an insufficient showing as to either prong. Strickland , 466 U.S. at 694, 697, 104 S.Ct. at 2069.
Where, as here, a conviction results from a guilty plea, "any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." Cooper v. State , 356 S.W.3d 148, 153 (Mo. banc 2011) (internal quotation and citation omitted).
Analysis
In his sole point relied on, Berry argues that the motion court clearly erred in denying his Rule 24.035 motion. Specifically, he asserts that plea counsel failed to investigate and advise him on his self-defense claim thereby rendering his guilty pleas involuntary.
Berry had the burden of proof-that is, of production and persuasion-in his Rule 24.035 motion hearing. See Davis , 486 S.W.3d at 905 & n.2. "The motion court's rejection of certain witness testimony as non-credible goes to whether Movant met his burden of demonstrating a claim for relief[.]" Id. at n.2.
Berry's analysis section evinces no effort (or success) at accounting for the motion court's credibility determinations-in other words, in accounting for whether the record compels the conclusion that Berry met his burden of persuasion as to the evidence adduced. The motion court impliedly found that Berry's testimony and evidence (i.e. , the evidentiary basis of his Rule 24.035 claim) was not credible. The motion court also found (both explicitly and implicitly) that plea counsel's testimony-which undercut the factual prerequisites of Berry's claims-was credible.
Regardless of the extent to which Berry did (or did not) satisfy his burden of production, Berry failed in his burden of persuasion. Id. The trial court had the right to disbelieve Berry and believe plea counsel-and it did so. Our standard of review does not authorize this Court to second guess the first-hand credibility determination of the motion court, nor will we do so here. See Zink , 278 S.W.3d at 192.
For the reasons discussed in this Opinion, Berry fails to demonstrate that the motion court clearly erred in rejecting Berry's Rule 24.035 motion for post-conviction relief. Berry's point is denied. The judgment of the motion court is affirmed.
DANIEL E. SCOTT, J.-CONCURS
MARY W. SHEFFIELD, J.-CONCURS

All rule references are to Missouri Court Rules (2010).

Berry had no legal right to enter the couple's home. He did not live there, did not have permission to be there, and the circumstances were wholly lacking to support any inference that Berry could have supposed otherwise.

The Honorable J. Miles Sweeney was assigned as Senior Judge on June 25, 2014, and presided over the plea agreement hearing.

On August 20, 2015, the motion court appointed a public defender to represent Berry. An entry of appearance was filed on August 30, 2015, and a thirty-day extension was granted for filing an amended motion. The transcript was filed on February 22, 2016. The motion court's thirty-day extension to file an amended motion caused the amended motion to be due on Sunday, May 22, 2016. When a due date falls on a weekend or holiday, the due date moves to the next business day. Rule 44.01(a). The following business day was Monday, May 23, 2016, and Berry filed his timely amended motion on May 23, 2016.

"[T]he same standard of review ... is applied when reviewing the grant or denial of a Rule 24.035 or Rule 29.15 motion." Johnson v. State , 470 S.W.3d 1, 4 (Mo.App. W.D. 2015) ; see Vogl v. State , 437 S.W.3d 218, 224 (Mo. banc 2014). As applicable here, we cite opinions from both manner of cases without further distinction.